UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JEFFREY D. FISHER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FENNEC PHARMACEUTICALS INC., ROSTISLAV RAYKOV, and ROBERT ANDRADE,<br><br>Defendants. | Case No. 1:22-cv-115<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeffrey D. Fisher ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Fennec Pharmaceuticals Inc. ("Fennec" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Fennec securities between

1

May 28, 2021 and November 26, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Fennec is a biopharmaceutical company that develops product candidates for use in the treatment of cancer in the U.S. The Company's lead product candidate is PEDMARK, a formulation of sodium thiosulfate, which has completed a Phase III clinical trial for the prevention of cisplatin induced hearing loss, or ototoxicity, in children.

3. In December 2018, Fennec initiated a rolling New Drug Application ("NDA") with the U.S. Food and Drug Administration ("FDA") for PEDMARK for the prevention of ototoxicity induced by cisplatin chemotherapy in patients 1 month to < 18 years of age with localized, non-metastatic, solid tumors, which was completed in February 2020 (the "Initial Pedmark NDA").

4. In August 2020, Fennec announced that it had received a Complete Response Letter ("CRL") from the FDA for the Initial Pedmark NDA because of deficiencies identified at the manufacturing facility of the Company's drug product manufacturer.

5. Then, in May 2021, the Company announced that it had resubmitted the NDA for PEDMARK with the FDA following receipt of final minutes from a Type A meeting with the FDA (the "Resubmitted Pedmark NDA").

6. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Fennec had not successfully remediated, and overstated its efforts to remediate, issues with the manufacturing facility of its drug product manufacturer for PEDMARK; (ii) as a result, the FDA was unlikely to

approve the Resubmitted Pedmark NDA; (iii) accordingly, the regulatory and commercial prospects of the Resubmitted Pedmark NDA were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

7. On November 29, 2021, during pre-market hours, Fennec issued a press release "announc[ing] that it expects to receive a [CRL] after the PDUFA [Prescription Drug User Fee Act] target action date of November 27, 2021 from the [FDA] regarding its [Resubmitted Pedmark NDA]." Specifically, Fennec advised investors that "[t]he FDA has indicated that, following a recent completion of a pre-approval inspection of the manufacturing facility of our drug product manufacturer, deficiencies have been identified[,]" and that "[o]nce the official CRL is received, the Company plans to request a Type A meeting to discuss the deficiencies and steps required for the resubmission of the NDA for PEDMARK™."

8. On this news, Fennec's common share price fell $4.86 per share, or 50.41%, to close at $4.78 per share on November 29, 2021.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

3

12. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Fennec is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

13. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14. Plaintiff, as set forth in the attached Certification, acquired Fennec securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15. Defendant Fennec is organized under the laws of British Columbia, Canada, with principal executive offices located at PO Box 13628, 68 TW Alexander Drive, Research Triangle Park, North Carolina 27709. Fennec's common shares trade in an efficient market on the Nasdaq Capital Market ("NASDAQ") under the trading symbol "FENC".

16. Defendant Rostislav Raykov ("Raykov") has served as Fennec's Chief Executive Officer at all relevant times.

17. Defendant Robert Andrade ("Andrade") has served as Fennec's Chief Financial Officer at all relevant times.

18. Defendants Raykov and Andrade are sometimes referred to herein as the "Individual Defendants."

4

19. The Individual Defendants possessed the power and authority to control the contents of Fennec's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Fennec's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Fennec, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

20. Fennec and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21. Fennec is a biopharmaceutical company that develops product candidates for use in the treatment of cancer in the U.S. The Company's lead product candidate is PEDMARK, a formulation of sodium thiosulfate, which has completed a Phase III clinical trial for the prevention of cisplatin induced hearing loss, or ototoxicity, in children.

22. In December 2018, Fennec initiated a rolling NDA with the FDA for PEDMARK for the prevention of ototoxicity induced by cisplatin chemotherapy in patients 1 month to < 18 years of age with localized, non-metastatic, solid tumors, which was completed in February 2020.

23. In August 2020, Fennec announced that it had received a CRL from the FDA for the Initial Pedmark NDA, stating that "after recent completion of a pre-approval inspection of the

manufacturing facility of our drug product manufacturer, the FDA identified deficiencies resulting in a Form 483, which is a list of conditions or practices that are required to be resolved prior to the approval of PEDMARK™."

**Materially False and Misleading Statements Issued During the Class Period**

24. The Class Period begins on May 28, 2021, when Fennec issued a press release announcing the submission of the Resubmitted Pedmark NDA with the FDA (the "May 2021 Press Release"). That press release stated, *inter alia*, that "[t]he resubmission for PEDMARK follows receipt of final minutes from a Type A meeting with the FDA[,]" and that, "[i]mportantly, the [CRL] received on August 10, 2020 referred to deficiencies with the facility of the drug product manufacturer[,]" thereby indicating to investors that the Resubmitted Pedmark NDA had resolved those issues.

25. The May 2021 Press Release also quoted Defendant Raykov, who stated, in relevant part, that "[w]e are pleased to have resubmitted the NDA for PEDMARK™ and look forward to working with the FDA through the review process[,]" and that, "[i]f approved, PEDMARK stands to be the first FDA approved therapy to reduce the risk of cisplatin induced ototoxicity in pediatric patients."

26. On June 22, 2021, Fennec issued a press release announcing that the FDA had accepted the Resubmitted Pedmark NDA, with a PDUFA target action date set for November 27, 2021 (the "June 2021 Press Release"). That press release quoted Defendant Raykov, who represented, in relevant part, that "[w]e look forward to working closely with the FDA through the review process[,]" and that, "[i]f approved, PEDMARK™ stands to be the first FDA approved therapy to reduce the risk of cisplatin induced ototoxicity in pediatric patients."

27. The June 2021 Press Release also reiterated that "[t]he [CRL] received on August 10, 2020, referred to deficiencies with the facility of the drug product manufacturer[,]" thereby indicating to investors that the Resubmitted Pedmark NDA had resolved those issues.

28. On August 10, 2021, Fennec issued a press release announcing the Company's second quarter 2021 financial results and providing a business update (the "2Q21 Press Release"). That press release stated, in relevant part, that "[t]he decrease in cash and cash equivalents between June 30, 2021 and December 31, 2020, is the result of expenses related to the development and preparation of [*inter alia*] our [NDA] resubmission of PEDMARK™[,]" and that "R&D [research and development] expenses decreased by $0.3 million for the three months ended June 30, 2021 over the same period in 2020 as the Company's development activities shifted back to essential activities in preparation for the launch of PEDMARK™."

29. The 2Q21 Press Release also quoted Defendant Raykov, who represented: "We are pleased that the FDA has accepted our PEDMARK™ NDA resubmission, and as we work closely with the Agency through the review process, we are also focusing on essential activities in preparation to bring this important treatment to children receiving cisplatin chemotherapy[.]"

30. Also on August 10, 2021, Fennec filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "2Q21 10-Q"). That filing stated, *inter alia*, that "[i]n the fourth quarter of 2020, we engaged in a Type A meeting with the FDA concerning the CRL [for the Initial Pedmark NDA] that we believe was constructive and collaborative[,]" and that, "[i]n May 2021, we announced the resubmission of our NDA for PEDMARK and in June 2021 we further announced that the FDA accepted for filing the resubmission of our NDA and set a PDUFA target action date of November 27, 2021."

7

31. The 2Q21 10-Q also assured investors that "[c]urrent liabilities decreased sharply, primarily due to the completion of manufacturing and pre-commercialization activities and regulatory expenses associated with the PEDMARK™ NDA resubmission[,]" and that "[w]e have decreased our research and development expenses related to PEDMARK™ as our efforts have shifted to pre-commercialization activities after the NDA resubmission in May 2021."

32. Appended as an exhibit to the 2Q21 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "[t]he [2Q21 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2Q21 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

33. On November 10, 2021, Fennec issued a press release announcing the Company's third quarter 2021 financial results and providing a business update (the "3Q21 Press Release"). That press release stated, in relevant part, that "[t]he decrease in cash and cash equivalents between September 30, 2021, and June 30, 2020 is the result of expenses related to the development and preparation of [*inter alia*] the NDA resubmission of PEDMARK™[,]" and that "R&D expenses decreased by $0.2 million for the three months ended September 30, 2021 over the same period in 2020 as the Company's development activities shifted back to essential activities in preparation for the launch of PEDMARK™."

34. The 3Q21 Press Release also quoted Defendant Raykov, who represented that "[w]e continue to work with the FDA on their review of our NDA application, in advance of the pending PEDMARK™ PDUFA target action date of November 27th[,]" and that "[w]e are focused on essential activities in preparation to bring this important treatment to children receiving cisplatin chemotherapy[.]"

8

35. Also on November 10, 2021, Fennec filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021 (the "3Q21 10-Q"). The 3Q21 10-Q contained the same statements as referenced in ¶ 30, *supra*, regarding the purportedly "constructive and collaborative" Type A meeting that the Company held with the FDA regarding the CRL for the Initial Pedmark NDA, as well as the regulatory milestones achieved for the Resubmitted Pedmark NDA.

36. The 3Q21 10-Q also assured investors that "[c]urrent liabilities decreased primarily due to the reduction in manufacturing and regulatory expenses associated with the PEDMARK™ NDA resubmission[,]" and that "[w]e have decreased our research and development expenses related to PEDMARK™ as our efforts have shifted to pre-commercialization activities after the NDA resubmission in May 2021."

37. Appended as an exhibit to the 3Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 32, *supra*, signed by the Individual Defendants.

38. The statements referenced in ¶¶ 24-37 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Fennec had not successfully remediated, and overstated its efforts to remediate, issues with the manufacturing facility of its drug product manufacturer for PEDMARK; (ii) as a result, the FDA was unlikely to approve the Resubmitted Pedmark NDA; (iii) accordingly, the regulatory and commercial prospects of the Resubmitted Pedmark NDA were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

39. On November 29, 2021, Fennec issued a press release announcing that it expected to receive a CRL from the FDA for the Pedmark NDA because of certain deficiencies identified at the manufacturing facility of the Company's drug product manufacturer. Specifically, that press release stated, in relevant part:

> Fennec . . . today announced that it expects to receive a [CRL] after the PDUFA target action date of November 27, 2021 from the [FDA] regarding its [NDA] for PEDMARK™ (a unique formulation of sodium thiosulfate), for intravenous administration for the prevention of ototoxicity associated with cisplatin chemotherapy in pediatric patients ≥1 month to 18 years of age with localized, non-metastatic, solid tumors.
>
> The FDA has indicated that, following a recent completion of a pre-approval inspection of the manufacturing facility of our drug product manufacturer, deficiencies have been identified. Once the official CRL is received, the Company plans to request a Type A meeting to discuss the deficiencies and steps required for the resubmission of the NDA for PEDMARK™.

40. On this news, Fennec's common share price fell $4.86 per share, or 50.41%, to close at $4.78 per share on November 29, 2021.

41. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## Post-Class Period Developments

42. On November 30, 2021, Fennec issued a press release confirming "that it received a [CRL] on November 29, 2021 from the [FDA] . . . regarding its [Pedmark NDA,]" which "was issued as a result of identified manufacturing deficiencies which need to be satisfactorily resolved before the Pedmark NDA can be approved."

10

43. Then, on January 31, 2022, Fennec issued another press release announcing "that Shubh Goel, the Company's chief commercial officer, has tendered her resignation and will depart Fennec in late February."

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

44. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Fennec securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Fennec securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Fennec or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Fennec;

- whether the Individual Defendants caused Fennec to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Fennec securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Fennec securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Fennec securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

53. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

13

55.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fennec securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Fennec securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

56.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Fennec securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Fennec's finances and business prospects.

57.      By virtue of their positions at Fennec, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Fennec, the Individual Defendants had knowledge of the details of Fennec's internal affairs.

59. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Fennec. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Fennec's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Fennec securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Fennec's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Fennec securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

60. During the Class Period, Fennec securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading

15

statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Fennec securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Fennec securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Fennec securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

63. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. During the Class Period, the Individual Defendants participated in the operation and management of Fennec, and conducted and participated, directly and indirectly, in the conduct

16

Case 1:22-cv-00115-CCE-JLW   Document 1   Filed 02/09/22   Page 16 of 18

of Fennec's business affairs. Because of their senior positions, they knew the adverse non-public information about Fennec's misstatement of income and expenses and false financial statements.

65. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Fennec's financial condition and results of operations, and to correct promptly any public statements issued by Fennec which had become materially false or misleading.

66. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Fennec disseminated in the marketplace during the Class Period concerning Fennec's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Fennec to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Fennec within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Fennec securities.

67. Each of the Individual Defendants, therefore, acted as a controlling person of Fennec. By reason of their senior management positions and/or being directors of Fennec, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Fennec to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Fennec and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Fennec.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 9, 2022.                    Respectfully submitted,

SCHILLER & SCHILLER, PLLC
*/s/ David G. Schiller*
David G. Schiller (NCSB # 26713)
304 East Jones Street
Raleigh, North Carolina 27601
Telephone: (919) 789-4677
Facsimile: (919) 789-4469
Email: david@schillerfirm.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*